UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Working America, Inc.,

        Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 14-1758 ADM/SER

City of Bloomington,

        Defendant.

_____

Edward A. Icove, Esq., Icove Legal Group Ltd., Cleveland, OH, and Joshua R. Williams, Esq., Law Office of Joshua R. Williams, PLLC, Minneapolis, MN, on behalf of Plaintiff.

Paul D. Reuvers, Esq., Iverson Reuvers Condon, Bloomington, MN, on behalf of Defendant.
_____

## I.  INTRODUCTION

On August 20, 2015, the undersigned United States District Judge heard oral argument on Plaintiff Working America, Inc.'s ("Working America") Motion for Summary Judgment [Docket No. 14] and Defendant City of Bloomington ("Bloomington" or the "City") Motion for Summary Judgment [Docket No. 20].[1]  For the reasons set forth below, Working America's motion is granted.

## II.  BACKGROUND

Working America, an advocacy organization focusing on labor issues, challenges Bloomington's ordinance that requires certain door-to-door solicitors to obtain a "solicitor's license" prior to soliciting.  Working America seeks a declaratory judgment that Bloomington's

---

[1] The parties were informed at the hearing and by letter [Docket No. 32] that the motions would not be taken under advisement until after a settlement conference with Magistrate Judge Steven E. Rau.  Having been advised that no settlement was reached, the parties' Cross Motions for Summary Judgment were taken under advisement on October 14, 2015.

ordinance unconstitutionally infringes on Working America's First and Fourteenth Amendment rights.

**A. The Ordinance**

Spurred by citizen complaints, Bloomington began regulating door-to-door solicitation in 1993. Reuvers Aff. [Docket No. 23] Ex. 3. A decade later, motivated by residents' concerns of privacy, aggressive sales tactics, theft, and burglary, the City proposed amendments to its solicitation regulations, which took effect in December 2003. Id. Exs. 4, 7. For the first time, the City imposed restrictions on all citywide solicitation and established an 8:00 p.m. to 9:00 a.m. solicitation curfew. Id. Ex. 7. The City also implemented a licensing system, which required certain solicitors to have a license before engaging in any form of solicitation. Id.

The current regulations, largely unchanged from the 2003 amendments, are codified at Division R in Chapter 14 of the City Code (the "Ordinance"). The purpose of Division R is expressed as:

> to prevent fraud and criminal activity, such as burglary, theft, and assault and to protect the privacy of residents in their homes by requiring commercial solicitors to be licensed and to impose narrowly tailored restrictions on the activity of all solicitors operating within the City that balance the City's legitimate concern with crime prevention and the health, safety and welfare of its residents against the right of persons to engage in solicitation as a form of constitutionally protected free expression or religious proselytizing. It is not the purpose of this ordinance to burden interstate commerce or interfere with constitutionally protected rights under the First Amendment of the United States Constitution or Art. I, Sec. 3 of the Minnesota Constitution.

Bloomington, Minn., Code § 14.352.[2]

The Ordinance defines "Regulated Activity" as "Going from place-to-place (1)

---

[2] Bloomington's ordinances can be found at http://www.amlegal.com/codes/client/bloomington_mn/ (last visited Nov. 2, 2015).

advertising or selling any product, service, or procuring orders for the sale of merchandise or personal services for future delivery or future performance; or (2) seeking donations of money or property on behalf of any person, organization or cause." Compl. [Docket No. 1] Ex. A; Bloomington, Minn., Code § 14.354.  The Ordinance defines a "solicitor" as:

> an individual who goes from place-to-place, including private property and private residences, without an invitation from the owner or occupant, for the purpose of:  (1) advertising, promoting, selling, leasing, installing or explaining any product, service, organization or cause; (2) seeking donations of money or property on behalf of any nonprofit, political or educational organization or for the purpose of procuring orders for the sale of merchandise or personal services for future delivery or future performance, whether or not the individual has a sample of the merchandise or is collecting advance payments for the orders. "Solicitor" shall also include the activity which has as its ultimate purpose the obtaining of orders.

Id.  An individual may be a solicitor that does not engage in Regulated Activity—for example someone volunteering for an environmental organization seeking signatures for a clean water petition—but all individuals who engage in Regulated Activity are solicitors.  Solicitors are permitted to engage in Regulated Activity only between the hours of 9:00 a.m. and 8:00 p.m.  Id. § 14.363(j).

While Bloomington generally requires individuals to obtain a license prior to engaging in Regulated Activity, individuals are not required to be licensed if they:

> solicit[ ] money, donations, or financial assistance of any kind or tak[e] orders for goods sold by an exempt organization, or sell[ ] or distribut[e] literature or merchandise for which a fee is charged or solicited on behalf of such an organization.

Compl. Ex. B; Bloomington, Minn., Code § 14.356(a).  Generally, "Exempt Organizations" are

3

those organizations registered under either §§ 501(c)(3) or 527 of the Internal Revenue Code.[3] There is, however, an exception to the exemption: the exemption "does not include individuals who are paid to engage in regulated activity." Id. Therefore, individuals who are paid to partake in regulated activity on behalf of an Exempt Organization must still be licensed. It is a misdemeanor to engage in regulated activity without the required license. Id. § 14.367.

The City's solicitor's license application requests 18 areas of information. Information is requested about the individual solicitor's name, physical description, and a recent photograph. Id. § 14.357. The City additionally requests general information about the proposed solicitation, such as when and where the solicitation will occur, and other information the City Council or licensing authority requires. Id. The application is required to be submitted at least one week prior to soliciting and there is an application fee of $33. Id. §§ 14.358, 14.03. The City states it will accept or deny a license application within seven working days. Id. § 14.361.

The Ordinance expressly provides 11 reasons for denial of a license, such as individuals who are not legally allowed to work under federal or state labor laws, non-United States citizens or resident aliens, or individuals who are "not of good moral character and repute." Id. § 14.362.

---

[3] The Ordinance defines "Exempt Organizations" as:

> Tax-exempt, nonprofit, charitable, religious and educational organizations pursuant to Section 501(c) of the Internal Revenue Code or tax-exempt political organizations under Section 527 of the Internal Revenue Code and registered pursuant to Minn. Stat. Sec. 10A.14. Exempt political solicitors also include candidates for public office, members of a candidate's election committee, or persons working on behalf of a candidate or any political issue, including without limitation, initiative, referendum, recall, levy or special ballot question. "Charitable organizations", "Religious organizations" and "Educational organizations" must also fall within the definitions therefore of Minn. R. 8130.6200. subps. 2, 3 and 4.

**B. Working America and this Lawsuit**

Working America is a nonprofit § 501(c)(5) labor organization that is a chartered affiliate of the AFL-CIO. Towne Decl. [Docket No. 18] ¶ 2. Working America has over three million members who are encouraged, but not required, to contribute $5 in annual dues. Id. ¶¶ 4, 5. New members are primarily recruited through door-to-door canvassing operations, in which professional canvassers speak with individuals about Working America's interests and goals and ask for their membership. Id. ¶ 5. Under the Ordinance, Working America is classified as an Exempt Organization.

Door-to-door canvassing, while costly compared to seeking membership by phone calling or mailings, is Working America's most effective way of encouraging political engagement. Id. ¶¶ 7–8. To this end, Working America typically canvasses for new members in the late afternoon and evening until 9:00 p.m. Id. ¶ 6. Since canvassing requires residents to be present in their homes, Working America has found canvassing prior to 7:00 p.m. to be largely ineffective. Id. ¶ 9. Thus, requiring door-to-door activities to cease at 8:00 p.m. would substantially diminish the effectiveness of Working America's canvassing operations. Id.

In 2011, Working America sought to canvass for new members in Bloomington. Id. ¶ 11. In June of that year, Working America wrote the Bloomington City Clerk to advise the City about Working America's planned member recruitment canvass. Id. The City License Examiner responded that Working America needed to apply for a solicitor's license and that all canvassing activity must stop at 8:00 p.m. and that since Working America's canvassers are paid, they are not exempt from the City's licensing requirement. Id. ¶ 11; Ex. C. Working America wrote the

5

Bloomington City Attorney multiple times regarding the constitutionality of the Ordinance.  Id. ¶ 11.  The City responded that the Ordinance was constitutionally sound and that Working America would need a license for any canvassing.  Id.  Working America has not applied for a license.  Reuvers Aff. Ex. 2 p. 5.

Working America brings this action to formally challenge the constitutionality of the City's Ordinance.  Specifically, Working America argues that the Ordinance's licensing requirement and 8:00 p.m. curfew are unconstitutional and violate Working America's First and Fourth Amendment rights.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate.  Id.  However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . .  Instead, 'the dispute must be outcome determinative under prevailing law.'"  Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citation

omitted). However, "summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint." Krenik, 47 F.3d at 959.

## B. First Amendment

The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits laws "abridging the freedom of speech." U.S. Const., amend. I. Governments thus cannot "restrict expression because of its message, its ideas, its subject matter, or its content." Police Dept. of Chi. v. Mosley, 408 U.S. 92, 95 (1972). The City and Working America agree that the government may, however, impose reasonable time, place, or manner restrictions on speech provided that the restrictions are content neutral, are narrowly tailored to serve a significant governmental interest, and leave open ample alternative channels for communication. Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). The parties disagree whether the Ordinance satisfies this standard.

### 1. Licensing

#### a. The Ordinance is facially content based

Turning broadly to the licensing scheme, the City also contends that the Ordinance's licensing requirement is a content neutral restriction on speech because it does not discriminate based on the content of the message being spoken. The City maintains that since the Ordinance does not suppress ideas or viewpoints, it is content neutral. To the contrary, Working America argues that § 14.354 regulates based on the content or message of speech and is therefore a

content based regulation that is unconstitutional unless it can withstand strict judicial scrutiny.[4]

The First Amendment bars governments from restricting expression "because of its message, its ideas, its subject matter, or its content." Mosley, 408 U.S. at 95. Laws or regulations that distinguish based on content are presumptively unconstitutional and are only permitted if the government proves the regulation is narrowly tailored to serve a compelling governmental interest. R.A.V. v. City of St. Paul, 505 U.S. 377, 395 (1992); Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd., 502 U.S. 105, 115, 118 (1991).

It is well-established that solicitation is a form of expression that is entitled to the same constitutional protections as traditional speech. Vill. of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 628–32 (1980). "Regulation of a solicitation must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech . . . and for the reality that without solicitation the flow of such information and advocacy would likely cease." Riley v. Nat'l Fed'n of the Blind of N.C., Inc,, 487 U.S. 781, 796 (1988) (internal quotation marks omitted and alteration in original). The Supreme Court recently reiterated the framework that determines whether governmental regulation of speech is content based or content neutral. Reed v. Town of Gilbert, Arizona explained that:

---

[4] Although not directly raised by the parties, the Court notes that Working America has standing to assert its claims despite never engaging in any Regulated Activity in Bloomington. Working America has standing because it avers the City's licensing scheme sufficiently chills its desire to canvass in Bloomington, and violating the Ordinance by canvassing without a required license is a misdemeanor. See 281 Care Committee v. Arneson, 638 F.3d 621, 627–68 (8th Cir. 2011) (noting that an injury in fact for a First Amendment challenge is satisfied if a plaintiff establishes its desire to engage in arguably protected activity but is chilled from doing so because of the statute and the reasonable threat of prosecution it presents).

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed of the idea or message expressed. . . . This common sense meaning of the phrase content based requires a court to consider whether a regulation of speech on its face draws distinctions based on the message a speaker conveys. . . . Some factual distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys.

135 S.Ct. 2218, 2227 (2015) (internal citations and quotation marks omitted). Reed further recognized that "laws that cannot be justified without reference to the content of the regulated speech" are content based regulations of speech, even if they appear facially neutral. Id.

In Reed, the Supreme Court concluded that a town code regulating the placement of outdoor signs was an unconstitutional content based regulation. The sign code at issue prohibited displaying signs anywhere within the town without a permit, but then exempted 23 categories of signs from that requirement. Id. at 2224. Focusing on three categories of exempt signs—"ideological signs," "political signs," and "temporary directional signs relating to a qualified event"— Reed first explained that the town treated each category of sign differently; "ideological signs," for example, could be up to 20 square feet in area while "temporary directional signs relating to a qualified event" were limited to six square feet. Id. at 2224–25. In holding that the code was content based on its face, Reed explained:

> The restrictions in the Sign Code that apply to any given sign thus depend entirely on the communicative content of the sign. If a sign informs its reader of the time and place a book club will discuss John Locke's Two Treatises of Government, that sign will be treated differently from a sign expressing the view that one should vote for one of Locke's followers in an upcoming election, and both signs will be treated differently from a sign expressing an ideological view rooted in Locke's theory of government. More to the point, the Church's signs inviting people to attend its worship services are treated differently from signs conveying other types of ideas. On its face, the Sign Code is a content-based regulation of speech. We thus have no need to consider the government's justifications or purposes for enacting the Code to determine whether it is subject to strict

9

scrutiny.

Id. at 2227.

Reed compels the same conclusion here. On its face, the Ordinance treats individuals differently depending on the function or purpose of their speech. For example, speech that has the function or purpose of generating money or property on behalf of a person, organization, or cause is "Regulated Activity," while speech that lacks such purpose is not. Like the Locke example used to explain the rationale in Reed, the need to obtain a permit depends entirely on the communicative content of the message. If the purpose of the speaker is merely to raise awareness for an issue or to collect signatures for a proposed ballot initiative, a permit is not required. However, once the individual asks for a donation, the purpose or function of the speech has changed and a permit is now required. Put simply, because whether speech is "Regulated Activity" can turn exclusively on the purpose or content of the message, the Ordinance is content based.[5]

Reed directs that a content based ordinance is subject to strict scrutiny "regardless of the government's benign motive, content neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech.'" Id. at 2228 (quoting Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 429 (1993)). While Bloomington's stated motivations justifying the Ordinance are meritorious—reducing fraud and criminal activity, and honoring a homeowner's heightened

---

[5] While Reed teaches that the City's regulation is content based, Reed does not stand for the proposition that all regulations on solicitation are *per se* content based regulations. Courts have, for example, concluded that regulations targeted at conduct are content neutral. See, e.g., Turner Broad. Sys., Inc. v. F.C.C., 512 U.S. 622, 645 (1994) (holding that rules that distinguish "based only upon the manner in which speakers transmit their messages to viewers, and not upon the messages they carry" are content neutral).

expectation of privacy inside their own home—"an innocuous justification cannot transform a facially content based law into one that is content neutral." Reed, 135 S.Ct. at 2228.

Moreover, the Ordinance is not saved from its content based designation by § 14.356, which exempts volunteers soliciting on behalf of an "Exempt Organization" from the necessity of a permit even if donations of money or property are requested. Even considering the exemptions in § 14.356, certain speech is still regulated based on the message or content of the speech. For example, an individual soliciting on behalf of a for-profit enterprise would not need a permit if that individual merely requests support for a particular issue, such as encouraging residents to support a proposed municipal zoning ordinance. However, if the purpose of the speech changes and that same individual concludes their message by stating "and think about my store the next time you are grocery shopping," the speech is regulated differently. In the first example, since the purpose of the speech was pure advocacy and the message's content lacked any commercial component, a permit would not be required. Alternatively, in the second example, since the purpose of the speech is a blend of advocacy and a commercial component, a permit is required. Therefore, even with broad exemptions, the licensing scheme is a content based restriction on speech because the regulation can still exclusively turn on the message or purpose of the speech.

### b. The Ordinance cannot withstand strict scrutiny

Having concluded that the Ordinance is a content based restriction on protected speech, the Ordinance is presumed unconstitutional and "may be justified only if the government proves [it is] narrowly tailored to serve compelling state interests." Id. at 2226; Ark. Writers' Project, Inc. v. Ragland, 481 U.S. 221, 231 (1987). "Strict Scrutiny is an exacting inquiry, such that 'it is

the rare case in which . . . a law survives strict scrutiny.'" Republican Party of Minn. v. White, 416 F.3d 738, 749 (8th Cir. 2005) (quoting Burson v. Freeman, 504 U.S. 191, 211 (1992)) (ellipsis in original).

This Ordinance cannot withstand the application of strict scrutiny. First, the interests advanced by the city to justify the Ordinance are legitimate, not compelling. See e.g., Watchtower Bible & Tract Society of N.Y., Inc. v. Village of Stratton, 536 U.S. 150, 163 (2002) (noting that crime prevention is a legitimate interest); Schaumburg, 444 U.S. at 627 (recognizing the legitimate interest "in regulating solicitation to protect its residents from fraud and the disruption of privacy").

Second, the Ordinance is not narrowly tailored because the City could use less restrictive means to meet its stated interests. See Frisby v. Schultz, 487 U.S. 474, 485 (1988) ("A statute is narrowly tailored if it targets and eliminates no more than the exact source of the 'evil' it seeks to remedy."). With respect to privacy, the licensing requirement does not eliminate the "evil," intrusive knocking at the front door, it merely requires the precursor step of requiring some speakers to obtain a license before their knocking is legal. Furthermore, many sources of privacy interruptions—individuals seeking signatures for a legislative initiative, volunteers promoting a neighborhood block party, Girl Scouts, Boy Scouts, or other youth fundraisers—do not need to be licensed. See Watchtower 536 U.S. at 168–69 ("The annoyance caused by an uninvited knock on the front door is the same whether or not the visitor is armed with a permit.").

The motivation for the Ordinance as a crime deterrent is not well grounded. With respect to crime, the Supreme Court has questioned the efficacy of a license regime in curtailing crime,

noting that opportunistic criminals could simply engage in activity that does not require a permit, such as requesting to use the telephone or posing as a surveyer. Id. at 169. Furthermore, the City fails to offer any tangible evidence of criminal conduct by solicitors which were the target of the licensing requirement of the Ordinance. Indeed, the sparse evidence proffered by the City on this issue is either anecdotal, aimed at concerns other than criminal activity, or too general to be helpful. See e.g., Reuvers Aff. Ex. 3 (1993 newspaper article showing that the first attempt at regulating solicitation was "prompted by phone calls from several citizens who said they were confused and concerned about what is required of these temporary business people"); Ex. 4 (2003 memorandum addressed to the Mayor and Bloomington City Council stating that the proposed amendments "are the result of citizen complaints about unwanted solicitors intruding upon the privacy of their homes and solicitors engaging in aggressive sales tactics"); Ex. 5 (noting the total number of notes and calls to City police regarding possible violations of the Ordinance); Ex. 7 (letter responding to a complaint about a "disheveled charitable solicitor" who was soliciting on behalf of a charitable organization that was exempt from the Ordinance's licensing requirement).

The Ordinance is a content based regulation that is not narrowly tailored to further a compelling government interest. As such, the other area of inquiry—whether the Ordinance leaves open ample alternative channels of communication—is not reached here.

**2. Section 14.362(2)**

In addition to being unconstitutional for the reasons discussed above, § 14.362(2) is also facially unconstitutional because it vests the City's licensing authority discretion to deny someone a solicitor's license on the grounds that the applicant is "not of good moral character or

repute." Since determining whether someone is "not of good moral character or repute" is subjective,§ 14.362(2) violates the longstanding principle that an ordinance providing unbridled licensing discretion "is void on its face." Lovell v. Griffin, 303 U.S. 444, 452–53 (1938). "A law subjecting the exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority." Forsyth Cty., Ga. v. Nationalist Movement, 505 U.S. 123, 131 (1992) (internal quotation marks omitted). "The reasoning is simple: If the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted." Id. (internal quotation marks and citation omitted).

### 3. Curfew

The Ordinance restricts individuals engaging in Regulated Activity between the hours of 9:00 a.m. and 8:00 p.m. Bloomington, Minn., Code § 14.363(j). Working America challenges the constitutionality of this curfew, arguing that it is an unreasonable time, place, and manner restriction. The City responds that the curfew is a reasonable time, place, and manner restriction on speech.

"Curfews on door-to-door solicitation are classic time, place, and manner restrictions because while they limit the times during which solicitation can occur, they do not completely foreclose it." Ass'n of Cmty. Orgs. for Reform Now v. Town of E. Greenwich, 453 F. Supp. 2d 394, 406 (D. R.I. 2006) (citing Hill v. Colorado, 530 U.S. 703, 726 (2000)). The Supreme Court has recognized a municipality's right to regulate when solicitation is allowed to protect residents "from annoyance, including intrusion upon the hours of rest." Martin v. City of Struthers, Ohio,

319 U.S. 141, 144 (1943). The constitutionality of time, place, and manner restrictions depend on whether the restrictions are "justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward, 491 U.S. at 791 (quoting Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293 (1984)).

The curfew is a content based restriction on speech. The Ordinance states that "[n]o solicitor shall engage in the regulated activity at any residential dwelling unit between the hours of 8:00 p.m. and 9:00 a.m." Bloomington, Minn., Code § 14.363(j). Thus, individuals who engage in Regulated Activity—going door-to-door selling or advertising any product or seeking donations of money of property—must cease their activities by 8:00 p.m. However, individuals who are not engaging in Regulated Activity—unpaid political canvassers or religious prosthelytizing, for example—may legally continue soliciting after 8:00 p.m. For the same reasons expressed above, this is a content based restriction.

The curfew is also not narrowly tailored. The City proffers the same interests to justify its curfew as it did to justify the licensing requirement. Again, "[t]here is reason to doubt the effectiveness of a soliciting curfew in reducing crime." Ohio Citizen Action v. City of Englewood, 671 F.3d 564, 574 (6th Cir. 2012) (citing Watchtower, 536 U.S. at 169); N.J. Citizen Action v. Edison Twp., 797 F.2d 1250, 1258 (3d Cir. 1986), cert. denied sub nom., Piscataway v. N.J Citizen Action, 479 U.S. 1103 (1987).[6] The City has no tangible evidence that demonstrates

---

[6] The City cites City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 51 (1986), for the proposition that because the City looked at solicitation curfews of other cities, it does not need to conduct new studies or collect independent evidence justifying its curfew. The City's citation is misplaced. For Renton to be supportive here, the City would have needed to rely on specific evidence the other cities relied upon in setting their curfews. For example, if Eagan conducted a

solicitation occurring before 8:00 p.m. is more invasive than solicitation occurring after 8:00 p.m. Although it is true that as the evening proceeds toward bedtime, a doorbell ring becomes more invasive, the City provides no evidence that 8:00 p.m. is when privacy interests need to be protected. The City cannot establish 8:00 p.m. as a time for when an individual's First Amendment rights must sunset.

Bloomington may appropriately regulate door-to-door solicitation within its borders if it must. However, any regulation must be respectful of the legitimate First Amendment rights enjoyed by door-to-door solicitors regardless of their motivation for doing so.

**C.  Equal Protection**

Working America also argues that the Ordinance violates its rights to Equal Protection under the Fourteenth Amendment and 42 U.S.C. § 1983. Working America's equal protection challenge is aimed at the Ordinance's provision that requires a license for individuals soliciting on behalf of an exempt organization if that individual is paid to solicit. Bloomington, Minn., Code § 14.356(a). Having previously concluded the Ordinance cannot withstand a First Amendment strict scrutiny analysis, the Court declines to rule on whether the Ordinance's preferential treatment of volunteer individuals soliciting on behalf of an exempt organization violates the Fourteenth Amendment.

---

study that reasonably justified its 8:00 p.m. curfew, Renton states that Bloomington could simply rely on the result of Eagan's study rather than conducting a study of their own. Id. ("The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."). Because the record is silent as to any studies or evidence the other cities relied on in setting their curfews, Bloomington's reliance on when other cities prohibit solicitation is insufficient.

**D. Severability**

Although not briefed, the City argued at the hearing that Minn. Stat. § 645.20 provides authority for severing the Ordinance's unconstitutional provisions while leaving the remainder of the Ordinance valid and enforceable. In response, Working America argued at the hearing that the Ordinance's constitutionally infirm provisions are pervasive and the entire Ordinance should therefore be invalidated.

The severability of a local ordinance is a question of state law. City of Lakewood v. Plain Dealer Publ'g Co., 486 U.S. 750, 772 (1988). Minn. Stat. § 645.20 states as follows:

> Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Minn. Stat. § 645.20. Section 14.368 of the Ordinance states:

> If any section, subsection, sentence, clause, or phrase of this Division is for any reason held to be invalid, such decision shall not affect the validity of the remaining portions of this Division. The City Council hereby declares that it would have adopted the Division in each section, subsection, sentence, clause, or phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses, or phrases be declared invalid.

Bloomington, Minn., Code § 14.368.

While only a small portion of the Ordinance remains after the licensing and curfew provisions are severed, § 14.368 does evince the City's clear intent to keep the remaining provisions in force. Therefore, the Ordinance provisions unrelated to licensing and curfew are left undisturbed by this Order and remain valid.

17

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Working America, Inc.'s Motion for Summary Judgment [Docket No. 14] is **GRANTED**;

2. Defendant City of Bloomington's Motion for Summary Judgment [Docket No. 20] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY**

BY THE COURT:


　　　s/Ann D. Montgomery　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  November 4, 2015.